■ STANDARD FUNDING CORP., Respondent, v JEFFREY LEWITT et al., Defendants, and PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Appellant. [639 NYS2d 137]

The plaintiff is a New York corporation engaged in the premium financing business. It provides loans to companies to cover the costs of insurance premiums. In 1989, the defendant Lewitt Agency, Inc. (hereinafter Lewitt) was an agent of the defendant Public Service Mutual Insurance Company (hereinafter PSM). The terms of the agency agreement authorized Lewitt to accept insurance proposals and collect the premiums on behalf of PSM in New Jersey.

In October 1989 the plaintiff investigated expanding its business to New Jersey. The plaintiff arranged with Lewitt to

provide premium loans for PSM insureds. Before entering into any agreements with Lewitt, the plaintiff telephoned PSM to verify that Lewitt was an agent of PSM. A PSM employee informed the plaintiff that Lewitt was an agent licensed to write all lines of insurance and had been an agent in good standing since August 1988.

On October 20, 1989, Lewitt provided two finance agreements to Standard which stated that PSM had issued insurance policies to the insureds and that the insureds had paid 25% of the premiums. The signatures of the insureds along with Lewitt's signature were on the finance agreements. In accordance with the terms of the finance agreements, Standard issued two checks to Lewitt in the amount of $23,325. In a letter dated October 26, 1989, Standard notified PSM that it had issued two checks to Lewitt for these policies.

On December 19, 1989, Lewitt provided two additional finance agreements to Standard which stated that PSM had issued insurance policies to two other insureds and that the insureds had paid 25% of the premiums. The signatures of these insureds along with Lewitt's signatures were on the finance agreements. In accordance with the terms of the finance agreements, Standard issued two checks to Lewitt in the amount of $204,000. In a letter dated December 31, 1989, the plaintiff notified PSM that it had issued two checks to Lewitt for these policies.

When the plaintiff did not receive payments in connection with these four finance agreements, it contacted PSM. PSM investigated the matter and discovered that PSM had not issued any of the insurance policies indicated on the finance agreements and had not received any of the premiums paid to Lewitt. The plaintiff attempted to collect the premiums from PSM, but PSM refused to pay. Thereafter, the plaintiff commenced this action against Lewitt and PSM.

Lewitt defaulted and has filed for bankruptcy. The plaintiff pursued its claim against PSM on the theory that PSM was liable for the acts of its agent. After a nonjury trial, the Supreme Court, Nassau County, entered a judgment in favor of the plaintiff and against PSM in the principal sum of $227,325.

On appeal, PSM contends that New Jersey law should be applied in this case because the fraud occurred in New Jersey. We will consider this issue even though it is raised for the first time on appeal, because it concerns an issue of law apparent on the face of the record which could not have been avoided by the opposing party if brought to their attention at the proper juncture (see, Vilardi v Berley, 201 AD2d 641, 643; Libeson v

*Copy Realty Corp.,* 167 AD2d 376; *Block v McGee,* 146 AD2d 730). However, the issue of whether New York or New Jersey law should be applied is irrelevant because agency law is the same in both jurisdictions. When there is no conflict in the laws of the jurisdictions, there is no choice of law issue *(see, Matter of Allstate Ins. Co. [Stolarz—N. J. Mfrs. Ins. Co.],* 81 NY2d 219, 225). The result is the same under the law of either jurisdiction.

In addition, we find that the Supreme Court properly determined that PSM was liable for the acts of its agent Lewitt. A principal must answer to an innocent party for the misconduct of its agent acting within the scope of its actual or apparent authority *(see, Ernst Iron Works v Duralith Corp.,* 270 NY 165; *Tucci v Hartford Cas. Ins. Co.,* 167 AD2d 387; 3 NY Jur 2d, Agency, § 239; *Baldasarre v Butler,* 132 NJ 278, 625 A2d 458; Restatement [Second] of Agency § 257). Here, even though Lewitt was operating outside the scope of its actual authority, PSM is liable for the agent's actions because Lewitt was operating within the scope of its apparent authority *(see, Rocks & Jeans v Lakeview Auto Sales & Serv.,* 184 AD2d 502; *Hatton v Quad Realty Corp.,* 100 AD2d 609, 610). PSM's confirmation that Lewitt had the authority to issue insurance and collect premiums made it reasonable for Standard to tender checks to Lewitt in reliance on its apparent authority *(see, Rocks & Jeans v Lakeview Auto Sales & Serv., supra).* Even though Lewitt defrauded both the plaintiff and PSM, this Court has held that between two innocent parties, the party that allowed the perpetration of the fraud, here, PSM, should bear the loss *(see, Rocks & Jeans v Lakeview Auto Sales & Serv., supra,* at 503; *Hatton v Quad Realty Corp., supra,* at 610; 3 NY Jur 2d, Agency, § 249).

Finally, the Supreme Court properly awarded interest from the date the cause of action accrued *(see,* CPLR 5001 [b]; *Farrell v Comstock Group,* 211 AD2d 493). Bracken, J. P., Balletta, Thompson and Hart, JJ., concur.